UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN PORTER,<br><br>                                  Plaintiff,<br><br>v.<br><br>WILLIAM D. GORE, Sheriff of San<br>Diego County, in his official capacity;<br>WARREN STANLEY, Commissioner of<br>California Highway Patrol, in his official<br>capacity,<br><br>                                 Defendants. | Case No.: 18-cv-1221-GPC-JMA<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION TO<br>DISMISS**<br><br>**[ECF No. 12.]** |

      When a protestor sounds her car horn at a political rally, does she engage in constitutionally-protected speech, or does she properly put herself in the crosshairs of California Vehicle Code § 27001, the so-called "horn ordinance?"  The question is a difficult one, but an answer is demanded by the complaint filed by Plaintiff Susan Gore ("Plaintiff") in the matter at hand.  (ECF No. 1.)

      On August 13, 2018, one of the two defendants in the complaint, Warren Stanley, the Commissioner of California Highway Patrol, filed a motion to dismiss the complaint.  (ECF No. 12.)  Shortly thereafter, the other defendant, William D. Gore, the Sheriff of San Diego County, moved to join in the motion.  (ECF No. 13.)  Plaintiff submitted a

response in opposition on October 16, 2018 (ECF No. 17), and Commissioner Stanley filed a reply on November 9, 2018 (ECF No. 19), which was also joined by Sheriff Gore (ECF No. 20).

On December 14, 2018, the Court held a hearing on the matter pursuant to the Chamber's young lawyer rule.[1]  After consideration of the moving papers, oral arguments, and the applicable law, the Court will **grant in part and deny in part** the motion to dismiss.

## I.    Factual Background

### A.  California's Horn Ordinance

Since 1905, California has required the installation of a horn or other audible signal device on motor vehicles as necessary safety equipment.  1905 Cal. Stat. 819, ch. DCXII, § 4(2).[2]  In 1913, the State introduced its first limitation on the use of car horns, which mandated that "No . . . person shall sound [the vehicle's] bell, gong, horn, whistle, or other device for any purpose except as a warning of danger."  1913 Cal. Stat. 645, ch. 326, § 12.  The modern incarnate of these early statutes inheres in California Vehicle Code sections 27000 and 27001, the former of which provides:

> A motor vehicle, when operated upon a highway[3], shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet, but no horn shall emit an unreasonably loud or harsh sound.

---

[1]    The Chamber's civil rules provide that "If a written request for oral argument is made in the moving, opposition or reply briefs stating that an attorney with less than five years of experience after becoming a member of the California bar will argue the oral argument, then such a representation will weigh in favor of holding a hearing."

[2]    The County's unopposed request for judicial notice of California's prior motor vehicle statutes (ECF No. 12-2) is hereby granted.

[3]    The California Vehicle Code defines "highway" as "a way or place of whatever nature, publicly maintained an open to the use of the public for purposes of vehicular travel. Highway includes street." CAL. VEH. CODE § 360.

CAL. VEH. CODE § 27000(a).  Section 270001, in turn, provides as follows:

> (a) The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn.

> (b) The horn shall not otherwise be used, except as a theft alarm system which operates as specified in Article 13 (commencing with Section 28085) of this chapter.

CAL. VEH. CODE § 27001.  Reading the two provisions of the Vehicle Code together, it is apparent that California "restricts the use of a horn to occasions when it is necessary for safe operation or as a theft alarm." *Garcia v. N.L.R.B.*, 785 F.2d 807, 808 n.1 (9th Cir. 1986)  Further, "[t]he California Attorney General has indicated that § 27001 is a "vehicular noise law." *Holcomb v. Ramar*, No. 1:13-CV-1102 AWI SKO, 2015 WL 6437433, at *6 (E.D. Cal. Oct. 21, 2015) (citing 55 Ops. Cal. Atty. Gen. 178, 181 n.11 (1972)).

Both Sheriff Gore and Commissioner Stanley have the authority to enforce section 27001.  Sheriff Gore is responsible for traffic laws in the unincorporated areas of San Diego County and several nearby cities; Commissioner Stanley's enforcement of the traffic laws extends throughout the state.  CAL. PENAL CODE § 830.2.

**B. Plaintiff's Involvement at the Congressman Issa Protests**

Plaintiff lives in Oceanside, California, and has participated in weekly protests at the district office of Congressman Darrell Issa in Vista, California.  Those protests regularly occurred on Tuesdays from 10 to 11 a.m., beginning after the November 2016 election and concluding in April 2018, at the office building at 1800 Thibodo Road, Vista, California, 92081, where Representative Issa maintained his Vista office.  The office building has no adjacent neighbors, faces a "main arterial road," and is flanked in the back by California Route 78, a six-lane freeway.  (ECF No. 1, at 3.)  Across the road from the building is "a wooded slope with houses at the top."  (*Id.*).

By Plaintiff's account, the Issa protests regularly "generated noise from both opponents and supporters of Representative Issa."  (ECF No. 1, at 2.)  Indeed, during

these protests, Plaintiff observed that "a supporter of the Representative often employed a sound system with loud speakers across the street from the office." (*Id.* at 3.) In addition, "drivers often sounded their vehicle horns in support of the protest." (*Id.*)

Plaintiff arrived at the weekly Issa protest on October 17, 2017 by car and parked it nearby while she participated. During the protest, a number of deputy sheriffs arrived on the scene and "issued citations to various individuals." (*Id.* at 4.)[4] At that time, Ms. Porter moved her car, and in doing so, drove past the protest and sounded her vehicle horn once to express her support of the protest. (*Id.*) As a result, Plaintiff was directed by Sheriff's Deputy Klein to pull over. (*Id.*) At that time, Deputy Klein issued her a citation for allegedly violating section 27001.

The citation had an appearance date of December 12, 2017, which Plaintiff attended. A hearing to contest the citation was scheduled for February 5, 2018, but when Deputy Klein did not appear, the citation was dismissed. (*Id.* at 5.) After Plaintiff dispatched a letter, on November 9, 2017, to Sheriff Gore asking him to "refrain from enforcing section 27001 against protected speech," Sheriff Gore's chief legal advisor advised on November 29, 2017 that "Ms. Gore's citation was not issued as a content-based regulation of speech but rather as a straight forward violation of the Vehicle Code." (*Id.* at 6.)

Although the citation was dismissed, Plaintiff continues to harbor a fear that section 27001 will be enforced against her. In that respect, her complaint states that she regularly drives her vehicle in areas of San Diego County where the Sheriff's Department and California Highway Patrol provide traffic enforcement, and that she is "censoring herself from using her vehicle horn by refraining from using her vehicle for expressive purposes, . . . to express[] support for political protests, rallies, or demonstrations" within that area. (*Id.* at 5–6.)

---

[4] The pleadings are unclear about who received these citations (Issa supporters or Issa protestors) and what they were issued citations for.

### C. Plaintiff's Complaint for Declaratory and Injunctive Relief

Plaintiff commenced her suit on June 11, 2018, alleging a 42 U.S.C. § 1983 claim under the First Amendment against both defendants, and a violation of Article I, § 2 of the California Constitution (pertaining to freedom of expression) against Sheriff Gore only.

Plaintiff contends that, on its face, or as applied, section 27001 imposes an overbroad restriction on her right to expression and constitutes a content-based restriction subject to strict scrutiny. In the alternative, if intermediate scrutiny is to apply, she asserts that section 27001 is insufficiently narrowly-tailored. Plaintiff seeks both declaratory and injunctive relief, urging the Court to declare section 27001 unconstitutional as applied to protected expression and to enjoin both Defendants from enforcing the statute.

### D. Defendants' Motion to Dismiss

Defendants move for dismissal on a number of defenses. As an initial matter, they dispute that horn honking is protected under the First Amendment. Even assuming it is protected, Defendants contend that section 27001 is a content-neutral restriction on expressive conduct that must be analyzed under intermediate, not strict scrutiny. On this point, Defendants posit that section 27001 is a valid time, place, manner restriction that serves important state interests in noise reduction, prevention of driver distraction, and the preservation of the efficacy of the horn as a warning device. They assert that no cry of overbreadth may sound when a regulation is a valid time, place, and manner restriction, and that Plaintiff's overbreadth challenge fails as a result. In the alternative, Defendants claim that the horn ordinance passes Constitutional muster as a permissible restriction on speech in a limited public forum. Finally, defendants dispute that Plaintiff's as-applied challenge is ripe for adjudication, and insist that the Eleventh Amendment bars Plaintiff's assertions under the California constitution.

## II.     Rule 12(b)(6) standard

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this respect, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

"Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

## III.    First Amendment Claim

"The First Amendment applies to state laws and regulations through the Due Process Clause of the Fourteenth Amendment." *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1053 (9th Cir. 2000). "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp. Inc.*, 529 U.S. 803, 816 (2000). But before Defendants are required to defend section 27001, Plaintiff must demonstrate that it abridges "speech," as it is understood in First Amendment jurisprudence. *See* U.S. Const. amend. I (prohibiting laws "abridging the freedom of

18-cv-1221-GPC-JMA

*speech*" (emphasis added)).

## A. Honking Can Be Expressive Conduct

"The First Amendment clearly includes pure speech, but not everything that communicates an idea counts as 'speech' for First Amendment purposes." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010). "[C]onduct intending to express an idea is constitutionally protected only if it is 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourth Amendments,' which means that 'an intent to convey a particularized message is present, and . . . the likelihood is great that the message will be understood by those who view it." *Id.* (quoting *Spence v. Washington*, 418 U.S. 405, 409–11 (1974) (per curiam) (alterations removed)).

Plaintiff argues that horn honking is protected under the First Amendment because if it is not pure speech, then it is expressive conduct. (ECF No. 17, at 12–17.) Plaintiff points out that, by adopting section 27001, the California Legislature implicitly acknowledged the communicative nature of the horn, because the statute permits the horn to be used to express an "audible warning." (*Id.* at 13.) Defendants contend that horn blowing is neither pure speech nor expressive conduct. (ECF No. 12, at 13–14.) They query, alongside *Weil v. McClough*, 618 F. Supp. 1294 (S.D.N.Y. 1985), "whether a honk or honks can ever relay an intelligible message (without the assistance of Morse or some other code)." *Id.* at 1296 n.1.

There is no basis for the Court to hold that horn honking is pure speech. Under governing case law, pure speech is that which is "purely expressive activity." *Anderson*, 621 F.3d at 1058. While expressive activity need not include words, *id.* at 1060, Plaintiff has cited no caselaw for the proposition that honking may be construed as purely expressive activity. Indeed, Plaintiff's own authorities have characterized honking as expressive conduct, rather than pure speech. *See, e.g.*, *State v. Immelt*, 173 Wash. 2d 1, 7 (2011). Moreover, Plaintiff's attempt to liken the honk of a car horn to music played at the Rock Against Racism concert at issue in *Ward v. Rock Against Racism*, 491 U.S. 781

7

(1989), is stridently off-key. In *Ward*, the Supreme Court upheld rock music as "expressive activity," because it "is one of the oldest forms of human expression," and because "rulers have known its capacity to appeal to the intellect and to the emotions and have censored musical compositions to serve the needs of the state." *Id.* at 790, 792. There is no credible argument that beeping a car horn has any particular capacity to "appeal to the intellect [or] the emotions"; nor can horn honking be deemed a classic "form of human expression." *Id.*

There is, however, substantial authority indicating that horn honking can arise to the level of expressive conduct. In *Goedert v. City of Ferndale*, 596 F. Supp. 2d 1027 (E.D. Mich. 2008), the district court held that "horn blowing is not an expressive act *a fortiori* and thus does not implicate the First Amendment unless context establishes it as such." *Id.* at 1031 (citation, quotation marks, and alterations omitted). To wit, the First Circuit in *Meaney v. Dever*, 326 F.3d 283 (1st Cir. 2003), noted that the plaintiff's blowing of an air horn was not protected because the audience would not have understood it as speech given their distance to the horn. *Id.* at 288. By contrast, the use of car horns in *Goedert*, *Weil*, and *Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294 (D.N.M. 2016), were deemed—within the context of those cases—to have communicated and interpreted as a "particularized message." *Anderson*, 621 F.3d at 1059. For example, in *Rio Rancho*, the district court concluded that the Plaintiff's flashing her headlights and honking her horn expressed a message to another driver that his headlights were turned on. 197 F. Supp. 3d at 1307. In *Weil*, the district court accepted plaintiff's claim that he honked his horn in order to advise a policeman of a traffic jam. 618 F. Supp. at 1296.

As applied to the context of this case, the Court concludes that Plaintiff's use of her car horn was expressive activity. Plaintiff alleges that she honked with the intent of showing support for the Issa protest, and that her honk was perceived at espousing such a message by others around her. (ECF No. 1, at 4.) The fact that other individuals at the protest were alleged to have engaged in similar horn-honking for expressive purposes furthers Plaintiff's contention. Indeed, courts around the country have understood that

honking can constitute expressive conduct.  *See, e.g.*, *Mitchell v. Maryland Motor Veh. Admin.*, 450 Md. 282, 309 (2016) *as corrected on reconsideration* (2016) (describing the dialogue between a vanity plate and a responsive honk from a passing motorist as protected under the First Amendment).

## B. The Traditional Public Forum Analysis Applies

Having determined that Plaintiff's expression was in fact protected, the Court must next ascertain "the nature of the forum in which the [statute] limits speech."  *Klein v. San Diego Cty.*, 463 F.3d 1029, 1033 (9th Cir. 2006).  There are three possibilities: a public, designated public, or nonpublic forum.  Both parties agree, as they must, that section 27001 regulates conduct within a traditional public forum.[5]

"A traditional public forum . . . is a place that has traditionally been available for public expression."  *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964 (9th Cir. 1999) (internal quotation marks omitted).   Thus, the street upon which Plaintiff had been driving when she was cited was undoubtedly a traditional public forum.  *See Hague v. CIO*, 307 U.S. 496, 515 (1939) ("[S]treets and parks . . . have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."); *see also Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2001) (en banc) ("Public streets and sidewalks . . . are the archetype of a traditional public forum."  (quoting *Snyder v. Phelps*, 562 U.S. 443, 456 (2011) (alterations and internal quotation marks removed)).

Relatedly, the Court rejects Defendants' attempts to claim that the forum at issue is "a specific channel of communication relating to motor vehicle operation" subject to more lenient scrutiny.  (ECF No. 12-1, at 13.)  Defendants' theory is that, by dint of

---

[5]    Specifically, the Court takes note of Defendants' assertion that section 27001 is a "reasonable time, place, and manner restriction," (ECF No. 12-1, at 14), and their acknowledgement that "[t]he time, place, and manner analysis assumes the existence of a public forum."  (*Id.* at 15 n.5).

California's substantial regulation of vehicle use, the government has somehow created a designated, limited public forum pertaining to vehicular communications. (*Id.* at 14–15 & n.7 (arguing that "the government may also designate a limited public forum by creating and regulating a channel of communication")). However, it is well-established that "[t]he government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). Having taken the position that horn honking does not constitute intelligible speech at all (*see* ECF No. 12-1, at 13), Defendants cannot very well turn around and argue that the State, through regulation, has "intentionally" opened up a special channel of communication just for honking discourse. The only relevant forum of analysis, then, is the traditional public forum.

### C. Section 27001 is content-neutral

"The government's right to limit expressive activity in a public forum 'is "sharply" circumscribed." *S.O.C., Inc. v. Cty. of Clark*, 152 F.3d 1136 (9th Cir. 1983) *as amended by* 160 F.3d 541 (9th Cir. 1998) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). However, "[a]lthough regulation of speech in a traditional public forum is disfavored, it is not impermissible." *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F3.d 784, 792 (9th Cir. 2002).

There are two potentially-applicable levels of scrutiny for restrictions on speech in a public forum. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, --- U.S. ---- 135 S. Ct. 2218, 2226 (2015). Strict scrutiny permits "[c]ontent-based regulations [to] pass constitutional muster only if they are the least restrictive means to further a compelling interest." *S.O.C.*, 152 F.3d at 1145.

On the other hand, "[t]he government may place reasonable time, place, and

manner restrictions on speech" if the regulation is content-neutral.  *A.C.L.U. of Nevada*, 466 F.3d at 792.  Content-neutral restrictions are subject to intermediate scrutiny and "must be justified without reference to the protected speech's content," and "narrowly tailored to serve a significant government interest, leaving open ample alternative channels of expression."  *Id.*; *Reed*, 135 S. Ct. at 2232 ("Laws that are *content neutral* are . . . subject to lesser scrutiny.")

Thus, the initial question this case poses is whether section 27001 is content-based or content-neutral.  "The appropriate level of scrutiny is tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content."  *Frisby v. Schultz*, 487 U.S. 474, 481 (1988).  The Court "will hold that the [horn statute] is content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of speech on its face."  *A.C.L.U. of Nevada*, 466 F.3d at 793.

## 1.  Section 27001 does not discriminate based on content

The Supreme Court has recently, in *Reed*, instructed that the first order of business is to determine whether the challenged statute, "on its face, discriminates based on content."  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) ("*Turner I*"); *see Reed*, 135 S. Ct. at 2228 (clarifying that the "first step in the content neutrality analysis" is "whether the law is content neutral on its face").

There is a split of persuasive authority on this question.  On the one hand, cases like *Goedert*[6] have held that a similar horn ordinance was content-discriminatory.  That

---

[6]     Plaintiff also relies on *Immelt*, which commented, in relevant part, that "it is dubious that [the horn] ordinance is a proper time, place, and manner restriction where it prohibits horn honking in a content-based manner, i.e., horn honking is permissible for official parades and other public events but not to express support for the lone person holding a 'support our troops' sign on a street corner."  173 Wash. 2d at 10.  *Immelt* does not give the Court pause, since the quoted passage is but dicta.  In any event, the ordinance in *Immelt* is distinguishable from section 27001, since the former explicitly exempted from its sweep any horn honking originating from "an officially sanctioned parade or public event."  *Id.* at 4.

case involved an as-applied challenge to the City of Ferndale's enforcement its "Honk Statute"[7] to "prohibit the display of signs asking motorists to 'honk' their horns to express their support for [] demonstrators, and prohibiting motorists from honking their horns for that purpose." 596 F. Supp. 2d at 1028. The *Goedert* court held that

> The Ordinance is content-based as any message, other than a warning, delivered by . . . horn honking violates the Ordinance . . . . [H]onking a vehicle's horn is not banned completely, only the honking for reasons other than traffic warning is deemed unlawful. The content of the message contained within the honk must be determined by the police before issuing citations, therefore the regulation, as applied to the honking motorists, may also be classified as a content-based policy.

*Id.* at 1033. On the other hand, cases like *Weil* and *Rio Rancho* have held to the contrary. In *Weil*, the Court held that New York City's honk ordinance[8] was content neutral, reasoning that

> The ordinance does not attempt to regulate the 'content' of horn honking. Rather, it prohibits all horn-honking, except in cases of imminent danger, regardless of the user's intended meaning . . . . Thus, the ordinance neither discriminates among messages nor limits the expression of any particular message. It is based on the manner of expression, not on its content.

618 F. Supp. at 1296. In *Rio Rancho*, it was likewise remarked that the operative ordinance[9] was "content neutral" because it "says nothing about the ideas or opinions that a driver may express." 197 F. Supp. 3d at 1308.

---

[7] "[T]he driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use the horn when upon a highway." M.C.L. 247.705(a).

[8] "No person shall operate or use or cause to be operated or used any claxon installed on a motor vehicle, except as a sound signal of imminent danger . . . ." N.Y. CITY ADMIN. CODE § 1403.3–4.05(1) (1975).

[9] "No person shall . . . operate a motor vehicle's . . . vehicle horn or lights, in such manner as to distract other motorists on the public way or in such a manner as to disturb the peace." RIO RANCHO MUN. CODE § 12-6-12.18(5).

18-cv-1221-GPC-JMA

The Court respectfully disagrees with the analysis in *Goedert* and aligns itself with the reasoning of *Weil* and *Rio Rancho*. There is a robust body of case law holding "bans on certain manner of expression or expressive conduct content-neutral." *A.C.L.U. of Nevada*, 466 F.3d at 794 (emphases omitted). Indeed, the Supreme Court in *Turner I* held that rules which distinguish "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry" are content-neutral. *Turner I*, 512 U.S. at 642. Here, section 27001 does not ban the honking of horns for the messages they carry—whether a honk expresses support for political protests, congratulations to a couple of newlyweds with cans tied to their car, or annoyance at the speed of traffic—is beside the point. The horn statute is violated any time when the horn is deployed and it was not "reasonably necessary" to do so "to give audible warning." CAL. VEH. CODE § 27001. The Court thus agrees with *Weil* that restrictions limiting honking to situations of vehicular necessity regulates expressive activity only "based on the manner of expression, not on its content." 618 F. Supp. at 1296.

To resist this conclusion, Plaintiff clings to the point made in *Geodert* that horn honking ordinances necessarily are content-based because "[t]he content of the message contained within the honk must be determined by the police before issuing citations." 596 F. Supp. 2d at 1033. Pursuant to this logic, Plaintiff argues that section 27001 must be "content based [since] it required 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation as occurred." *McCullen v. Coakley*, --- U.S. ----, 134 S. Ct. 2518, 2531 (2014) (quoting *F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 368 (1984)).

Unfortunately for Plaintiff, however, the Supreme Court has "never suggested that the kind of cursory examination that might be required to exclude [unregulated expressions] from the coverage of a regulation . . . would be problematic." *Hill v. Colorado*, 530 U.S. 703, 722 (2000). In *Hill*, the Supreme Court rejected a challenge to a Colorado law prohibiting any person from knowingly approaching within eight feet of another person near a health care facility (often abortion clinics) for the purpose of

18-cv-1221-GPC-JMA

engaging in oral protest, education, or counseling of that person. Plaintiffs, who were "sidewalk counselors" seeking to advise women on alternatives to abortion, argued that the law required enforcement authorities to sift through the content of their expressions. The Supreme Court rejected sidewalk counselors' argument as exaggerated, because any review entailed by the ordinance "need be no more extensive than a determination whether a general prohibition of [oral protest, education, or counseling] applies to innocuous speech." *Id.* at 721.

The Court concludes that any inquiry by enforcement officers into the applicability of section 27001 would be no more extensive than a limited determination as to whether a horn was reasonably necessary to insure safe vehicular operation. Such a "cursory examination" is not "problematic" and does not render section 27001 a content-based restriction. *Id.* at 722.

### 2. Section 27001 is justified without reference to content

A regulation may be content-based even if it does not discriminate on the basis of content if the government "adopt[s] a regulation of speech because of disagreement with the message it conveys." *A.C.L.U. of Nevada*, 466 F.3d at 793. For this inquiry,

> The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech."

*Id.* (quoting *Ward*, 491 U.S. at 791). Thus, if the regulation's aim is to control "secondary effects resulting from the protected expression, rather than inhibiting the protected expression itself," the content-neutrality requirement is met. *Colacurcio v. City of Kent*, 163 F.3d 545, 551 (9th Cir. 1998); *see also City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986) (holding that laws aimed at controlling the secondary effects of adult businesses are content-neutral).

Defendants assert that there are three purposes served by section 27001, all of which are aimed at the secondary effects resulting from honking, rather than any expressive message that might be conveyed by honking. (*See* ECF No. 12-1, at 17–19.) Its first salutary purpose is promoting traffic safety by preventing distractions that can endanger others. (*Id.* at 17, citing *Rio Rancho*, 197 F. Supp.3d at 1310 (holding that the city "has a substantial government interest in promoting traffic safety in it[s] roadways by preventing the distraction of motorists")). The second purpose is also traffic-safety related: restricting the use of horns maximizes their utility as a safety feature when exigent circumstances arise. (*Id.* citing *Weil*, 619 F. Supp. at 1296–97 ("The honking of horns in situations not involving imminent danger . . . seriously undercuts the usefulness of such horns as a method of indicating the existence of an actual emergency situation.")). The third and final purpose is simply noise reduction, specifically and pointedly directed at the potential cacophony that might otherwise swell in the absence of specific legislation prohibiting horn use. (*Id.* at 18.)

Significantly, Plaintiff does not contend that the government enacted section 27001 for a speech-chilling purpose. Indeed, the Court sees no indication that section 27001 was drafted to control the content of protected communication. The most that can be said for the legislative intent behind section 27001 is that it seeks to restrict "secondary effects"—i.e., noise and distractions—"resulting from the protected expression." *Colacurcio*, 163 F.3d at 551.

### D. Plaintiff's as-applied challenge

Because section 27001 is justified without reference to the content of the regulated conduct, and is not content-based on its face, the statute is content-neutral and must be assessed under immediate scrutiny. Before proceeding onto Plaintiff's as-applied challenge under that standard, however, the Court pauses to recognize that Plaintiff has alleged both an as-applied and an overbreadth facial challenge.

"As a general matter, a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 935, 857 (9th Cir. 2011).

"A paradigmatic as-applied attack, by contrast, challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the statute to a specific circumstance." *Id.* (citation and quotation marks omitted).

As the Supreme Court has recognized, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). At the same time, the high court has instructed courts facing simultaneous as-applied and facial challenges to first resolve the as-applied challenge before addressing the facial challenge in order to avoid "proceed[ing] to an overbreadth [facial] issue unnecessarily." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989). Indeed, "it is not the usual judicial practice . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied." *Id.*

Given clear instructions from the high court, this Court will address the as-applied challenge before turning to the facial overbreadth issue. That way, "[b]y focusing on the factual situation before us, [the Court] face[s] 'flesh-and-blood' legal problems with data 'relevant and adequate to an informed judgment.'" *New York v. Feber*, 458 U.S. 747, 768 (1982) (footnotes omitted).

### 1. Plaintiff's as-applied challenge is ripe

Defendants' first objection is that, because the citation against her was dismissed, Plaintiff's as-applied challenge is speculative and not ripe. (*See* ECF No. 12-1, at 26). The Court does not agree.

Under governing law, injury in the form of self-censorship is enough to overcome a ripeness challenge. *See Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010) ("Self-censorship is a constitutionally recognized injury.") What's more, self-censorship is "a harm that can be realized even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). Indeed, "[i]n the context of First

Amendment speech, a threat of enforcement may be inherent in the challenged statute, sufficient to meet the constitutional component of the ripeness inquiry." *Wolfson*, 616 F.3d at 1059. As a corollary of this principle, "past prosecution or enforcement, has little weight in [ripeness] analysis." *Id.* at 1060.

To the extent that past prosecutions matter, however, it is clear that Plaintiff's October 17, 2017 citation (dismissed, by happenstance, as it were) reasonably instills in her a fear that engaging in the same kinds of expressive activity—i.e., using her vehicle horn to express support for political protests—would portend another citation. As a result of this knowledge, Plaintiff alleges that she is "censoring herself by refraining from using her vehicle horn for expressive purposes," even though she wishes to engage in the many "rallies, protests, demonstrations, or other events" in the San Diego County area. (ECF No. 1, at 5, 6.) "Because we relax the requirements of standing and ripeness to avoid the chilling of protected speech, [Plantiff] need not await prosecution to seek preventative relief." *Wolfson*, 616 F.3d at 1060. Plaintiff's as-applied suit is ripe for adjudication.

### 2. As applied, section 27001 is not a valid time, place, and manner restriction

"An ordinance aimed at combatting the secondary effects of a particular type of speech survives intermediate scrutiny 'if it is designed to serve a substantial government interest, is narrowly tailored to serve that interest, and does not unreasonably limit alternative avenues of communication.'" *World Wide Video of Washington, Inc. v City of Spokane*, 368 F.3d 1186 (9th Cir. 2004) (quoting *Ctr. For Fair Pub. Policy v. Maricopa Cty.*, 336 F.3d 1153, 1166 (9th Cir. 2003)). Because Plaintiff raises an as-applied challenge, the Court views the State's purported interests through the specific prism of Plaintiff's expressive conduct—the singular honk she deployed in support of the Issa protest.[10]

---

[10]     It is important to note that the Ninth Circuit recognizes two types of as-applied challenges. The "'paradigmatic' type off as-applied challenge is one that tests a statute's constitutionality in one

17

18-cv-1221-GPC-JMA

## a. Substantial Government Interest

As referenced *supra*, Defendants contend that section 27001 furthers three important state purposes: promoting traffic safety by minimizing the utility of car horns as a safety feature by restricting their use, preventing driver distraction, and noise reduction. (ECF No. 12-1, at 17.) They invoke a number of cases in which it is stated that the elimination of noise pollution and the promotion of traffic safety is a substantial government goal. *See, e.g.*, *Valle Del Sol, Inc.*, *v. Whiting*, 709 F.3d 808, 823 (9th Cir. 2013) ("Promoting traffic safety is undeniably a substantial government interest."); *Rio Rancho*, 197 F. Supp.3d at 1301 ("[The city] has a substantial government interest in promoting traffic safety on it [sic] roadways by preventing the distraction of motorists."); *Ward*, 491 U.S. at 796 ("[The government has] substantial interest in protecting its citizens from unwelcome noise," and "may act to protect even such traditional public forums as city streets and parks from excessive noise.").

## b. Narrow Tailoring

Plaintiff does not dispute that noise reduction and traffic safety are important state interests. Rather, her objection is that section 27001 is not sufficiently tailored to the harm that California seeks to prevent.

As the Supreme Court has stated, to be narrowly-tailored under intermediate scrutiny, the statute adopted "need not be the least restrictive or least intrusive means"

---

particular fact situation' while refusing to adjudicate the constitutionality of the law in other fact situations." *Hoye*, 653 F.3d at 854 (citations and internal quotation marks omitted). The "second kind of as-applied challenge must be based on the idea that the law itself is neutral and constitutional in all fact situations, but that it has been enforced selectively in a viewpoint discriminatory way." *Id.*

Although Plaintiff's complaint does not distinguish between these two types of as-applied challenges, the Court discerns only a "paradigmatic" challenge, and will proceed on that basis.

To wit, Plaintiff does not contend that "the law itself is neutral and constitutional in all situations." *Id.* Nor does she attempt to "show that [the] municipality's content-discriminatory enforcement of an ordinance is the result of an intentional policy or practice." *Id.* at 855. Plaintiff has not alleged a content-discriminatory enforcement of Section 27001—there is no claim that either of the Defendants maintained a policy which exempted from enforcement, for example, people who honk in support of Representative Issa, but which targeted individuals who protested against him.

available. *Ward*, 491 U.S. at 798. The requirement is satisfied so long as the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Colacurcio*, 163 F.3d at 553 (quoting *Ward*, 491 U.S. at 799). However, "this standard does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary" to reach the government's desired end. *Id.* at 799. A law is not narrowly-tailored even for content-neutral purposes if the government has "readily available alternatives" or "various other laws at its disposal that would allow it to achieve its stated interest while burdening little or no speech." *Comite de Jornaleros*, 657 F.3d at 949–50.

The burden is on the government to establish that its regulation is narrowly-tailored. *See Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1120 (S.D. Cal. 2017), *aff'd*, 742 F. App'x 218 (9th Cir. 2018) ("For intermediate scrutiny 'the burden of justification is demanding and it rests entirely on the state." (quoting *Tyler v. Hillsdale Cty. Sheriff's Dept.*, 837 F.3d 678, 694 (6th Cir. 2016)); *Young v. Hawaii*, 896 F.3d 1044, 1073 (9th Cir. 2018) ("[T]he State bears the burden 'affirmatively [t]o establish the reasonable fit we require.'" (quoting *Bd. of Trs. of State Univ. of N.Y.*, 492 U.S. at 480). The government "must do more than just simply posit the existence of the diseases sought to be cured," and "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner I*, 512 U.S. at 664.

Defendants assert that the goal of noise reduction is readily addressed by section 27001. They point out that car horns, by their design, and by law, are inherently loud. *See* CAL. VEH. CODE § 27000(a) (requiring horns to be capable of "emitting sound audible under normal conditions from a distance of not less than 200 feet"). To mitigate the effects of potential misuse, Defendants argue, the legislature has deemed fit to restrict all horn usage except as an automated theft alarm, or when it "is necessary for safe operation." *Garcia v. N.L.R.B.*, 785 F.2d at 808 n.1. In addition, section 27001 promotes traffic safety in two ways. For one, restricting horn usage reduces day-to-day driver

distractions.  For another, by limiting the use of the horn to exigent traffic circumstances, section 27001 prevents drivers from becoming desensitized to the horn.

Plaintiff objects from several quarters.  As a preliminary matter, Plaintiff contends that Defendants have not met their burden of showing that expressive horn use, such as hers, does any violence to the government's stated objectives.  (ECF No. 17, at 29.) Plaintiff points out that nothing supports the claimed connection between expressive honks and public safety and noise pollution but the Defendants' ipse dixit (*id.* at 20) and that there is a question of fact—ill-suited for resolution on a Rule 12(b)(6) motion— whether a singular honk in the middle of a political protest on a public street would actually lead to the ills cited in support of section 27001.  (*Id.* at 29.)

The Court agrees that Defendants have defaulted on their burden of showing that honks such as Plaintiff's undermine the government's interest in traffic safety and noise control.  The Supreme Court has made clear that, to survive intermediate scrutiny, the government must show "reasonable inferences based on substantial evidence" that the challenged statute is substantially related to the government interest.  *Turner Broadcasting Sys. Inc. v. FCC*, 520 U.S. 180, 195 (1997) ("*Turner II*"); *see also Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984) (requiring the statutes in question to "respond [] *precisely* to the substantive problem which legitimately concerns [the government]" (emphasis added)). The state cannot "get away with shoddy data or reasoning" on this point.  *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 428 (2002) (plurality).  Typically, the substantial evidence required of the government comes to the Court by virtue of an "evidentiary record" from state legislators "explaining why . . . the legislature . . . acted as it did."  *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 258 (2014) (Breyer, J., dissenting); *see e.g.*, *Federal Election Comm'n v. Colorado Republican Federal Campaign Comm.*, 533 U.S. 431 (2001) (upholding campaign finance rules on the basis of a summary judgment record that contained declarations from fundraisers and members of Congress).

Here, however, Defendants have not introduced any evidence of what the California legislature had in mind when it enacted section 27001, or whether section 27001 responds "precisely" to the substantive problems which concerned the legislature. *Taxpayers for Vincent*, 466 U.S. at 810. Without any such record evidence, this Court cannot determine "whether the legislature has 'base[d] its conclusions upon substantial evidence.'" *Young*, 896 F.3d at 1073 (quoting *Turner II*, 520 U.S. at 196)); *see also Tollis, Inc. v. San Bernardino Cty.*, 827 F.2d 1329, 1333 (9th Cir. 1987) (holding that the county "must show that in enacting the particular limitations . . . *it relied* upon evidence permitting a reasonable inference that, absent such limitations, the adult theaters would have harmful secondary effects" (emphasis added)).[11]

Moreover, it is not enough that counsel for Defendants has made unadorned assertions of a relationship between honking and noise pollution and traffic safety. (*See, e.g.*, ECF No. 12-1, at 19). The Ninth Circuit has "never accepted mere conjecture as adequate to carry a First Amendment burden," and has on many occasions refused to "hold that hypotheticals, accompanied by vague allusions to practical experience, demonstrate a sufficiently important state interest." *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653–54 (9th Cir. 2007) (remanding for further evidentiary development because the district court's finding that City's ordinance furthered a sufficient government interest "rested on hypothetical situations not derived from any record evidence or government findings"); *see also Comite de Jornaleros*, 657 F.3d at 949 (holding that city ordinance which categorically prohibited solicitation of businesses, employment, and contributions on streets and highways was insufficiently tailored to city's interest in promoting traffic flow and safety where the city "introduced evidence of

---

[11] Though the Court is mindful that it must "accord substantial deference to the predictive judgments" of the legislature when conducting intermediate scrutiny, *Turner II*, 520 U.S. at 195, it is the law that "the [government] is not thereby insulated from meaningful judicial review." *Young*, 896 F.3d at 1073 (quotations and internal citations omitted). In order to effect judicial review of legislative policy-judgments (and then to afford it the appropriate deference), there must, at the very least, be some evidence that the legislature had actually made the policy judgment that Defendants claim it made.

traffic problems only with respect to a small number of major streets and medians," but "no evidence to justify extending its solicitation ban throughout the City in such a sweeping manner").

Plaintiff also contends that even if Defendants' stated harms are real (rather than merely conjectural), section 27001 does not alleviate the asserted harms to traffic safety and noise control in a direct and material way—it is both under- and over-inclusive. She argues that section 27001 "allows nearly unrestricted use of vehicle horns as theft alarms that can undermine traffic safety and result in noise pollution," but at the same time "prohibit[s] numerous expressive uses that neither jeopardize traffic safety nor create excessive noise as a matter of law." (ECF No. 17, at 26.) And, Plaintiff claims that there are "various other laws at [the government's] disposal," for example, noise or disturbing the peace regulations, "that would allow it to achieve its stated interests while burdening little or no speech." *Comite de Jornaleros*, 657 F.3d at 950.

The Court is not long detained with Plaintiff's under-inclusiveness argument—i.e., that theft alarms might contribute to noise pollution and distract drivers, since intermediate scrutiny requires only a "'fit' between the legislature's ends and the means chosen to accomplish those ends, . . . a fit that is not necessarily perfect, but reasonable." *Bd of Trs. of State Univ of N.Y.*, 492 U.S. at 480 (citations and internal quotation marks omitted). The Supreme Court has made clear that "[a] State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns." *Williams-Yulee v. Fla. Bar,* --- U.S. ----, 135 S. Ct. 1656, 1668 (2015). That a theft alarm might be permitted to blare on into the night does not render section 27001 unconstitutional.

The Court is, however, concerned with the over-inclusiveness argument. If a challenged statute is "significantly overinclusive, it is not narrowly tailored." *Comite de Jornaleros*, 657 F.3d at 948. In the case before the Court, Defendants have taken the position that a citation based on one single expressive honk, such as Plaintiff's, would constitute a "straight forward application of the vehicle code," (ECF No. 1, at 6), even

though there was never any allegation as to noise level or any claim that the honk actually posed a traffic danger or disturbed the peace. Plaintiff contends that Defendants must furnish proof that her one honk is capable of undermining the interests sought to be vindicated.

The record is bereft of any such proof and in any event, the matter is unfit for resolution upon a Rule 12(b)(6) as a result. The case at hand is similar to the one encountered by the Ninth Circuit in *Tollis*, 827 F.3d at 1329. *Tollis* considered an injunction against the enforcement of a zoning ordinance that prohibited adult-oriented businesses from locating within one thousand feet of certain establishments, like schools and churches. Like here, the government in *Tollis* had interpreted the ordinance such that "a single showing of an adult movie would make a theater an 'adult-oriented business' for the purposes of the ordinance." *Id.* at 1331. The Ninth Circuit acknowledged the "substantial interest of the government in preventing the deleterious secondary effects of adult theaters," but found dispositive the government's failure to present "evidence that a single showing of an adult movie would have any harmful secondary effects on the community." *Id.* at 1333–34.

Here too, there is an evidentiary lacuna as to whether Plaintiff's single act of honking would in fact "diminish the horn's usefulness as a safety device," as Defendants claim. (ECF No. 12-1, at 19.) Even assuming there was such evidence, it would give rise to a disputed question of fact, which the Court must be wary of addressing on a Rule 12(b)(6) motion. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1045 (9th Cir. 2018) (holding that contested factual questions regarding the nature of the forum precluded dismissal without further "development of the record"). Indeed, when the Court inquired at oral arguments whether the parties were aware of any similar First Amendment cases which were disposed of on a motion to dismiss, rather than on a motion for summary judgment, both the Plaintiff and the Defendants responded in the negative.

In light of Defendants' failure to justify the sweeping breadth of section 27001, to contest the existence of "readily available alternatives" capable of accomplishing the goals of section 27001, *Comite de Jornaleros*, 657 F.3d at 950, and the disputed issue of fact presented by Plaintiff's as-applied challenge, the Court is abundantly convinced that it may not grant Defendants' motion to dismiss. "It may well be that on a more robust evidentiary showing, made after greater time and testimony is taken, that the State will be able to establish a reasonable fit. But not yet." *Duncan*, 265 F. Supp. 3d at 1120.

Because Plaintiff's as-applied challenge must be permitted to proceed, the Court will not at this juncture "proceed to an overbreadth [analysis] unnecessarily." *Bd. of Trustees of State Univ of N.Y.*, 492 U.S. at 484 (1989). Defendants' motion to dismiss Plaintiff's First Amendment claim is **denied**.

## IV.  California Constitution Claim

Plaintiff has raised identical freedom of expression claims under Article I, § 2 of the California Constitution. Unlike her First Amendment claims, Plaintiff's state-law claims are directed only at Sheriff Gore, in his official capacity as the Sheriff of San Diego County. In addition to a declaration that section 27001 violates the California constitution, Plaintiff seeks to enjoin Sheriff Gore, and his officers, agents, and employees, from enforcing section 27001 against protected speech and expression.

Sheriff Gore contends that the Eleventh Amendment, as interpreted in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), precludes assertion of federal jurisdiction in this case. In *Pennhurst*, the Supreme Court held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id*. at 121. Plaintiff counters that her suit is not within the purview of the rule in *Pennhurst* because that she named only the Sheriff, a county actor, rather than the State or a state official, and counties are not afforded Eleventh Amendment immunity. *See e.g., Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 401 (1979) (noting that the Supreme Court has "consistently refused to construe the [Eleventh] Amendment to afford protection to

24

political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power'").

However, Plaintiff's artful pleading will not bring her state-law claims over the Eleventh Amendment bar. Although *Pennhurst* is literally addressed to claims against "state officials" accused of violating "state law," a thorough study of that opinion reveals that *Pennhurst* encompasses claims such as Plaintiff's. In *Pennhurst*, the Supreme Court was most concerned about those claims, grounded in violations of state law, which, by virtue of the "relief sought and ordered," would "ha[ve] an impact directly on the State itself." *Id.* at 117. Here, Plaintiff seeks as relief the invalidation of section 27001, a state law, on the basis of the California constitution. Whether she names a county official or a state official, the relief sought is aimed directly at the State of California[12]: "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 101 n.11 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). Presumably, declaratory judgment from this Court that section 27001 is unlawful under California's constitution would be have effect, not only on Sheriff Gore and his office, but upon the entire state of California.

What's more, the Court in *Pennhurst* expressly cautioned against withholding sovereign immunity on the basis of pleading formalities. The majority vehemently rejected the dissent's view that "the Eleventh Amendment would have force [only] in the rare case in which a plaintiff foolishly attempts to sue the State in its own name, or where he cannot produce some state statute that has been violated to his asserted injury." *Id.* at 116. *Pennhurst* instead recognized that federal courts have no business ordering prospective relief on the basis of state law, since such relief would do little to "vindicate the supreme authority of federal law." *Id.* at 106. Indeed, federalism itself forbids the

---

[12] As an aside, the Court finds it telling that it is counsel for Commissioner Stanley—i.e., the Attorney General of California—that has moved to dismiss Plaintiff's claims under the California constitution, not counsel for Sheriff Gore. The latter has merely joined in the defense.

"great[] intrusion on state sovereignty" that arises "when a federal court instructs state officials on how to conform their conduct to state law." *Id.*

The above analysis comports with the Ninth Circuit's understanding of *Pennhurst* as broad-reaching. *See Actmedia, Inc. v. Stroh*, 830 F.2d 957, 964 (9th Cir. 1986). Accordingly, "[s]ince resolution of [Plaintiff's] state constitutional claims against [Sheriff Gore] will directly affect the way that California enforces section [27001], we conclude that federal courts are barred from addressing [her] claims by the eleventh amendment." *Id.* Plaintiff's state law claims are **dismissed**, but because it is not impossible that she might overcome the jurisdictional defects detailed herein, dismissal is with leave to amend.

## V.     Conclusion

For the reasons enumerated in this order, Defendants' motion to dismiss is **granted in part** (as to the state-law claims) **and denied in part** (as to the First Amendment claims). The dismissal as to the state law claims are without prejudice; if Plaintiff wishes to file an amended complaint, she must do so no later than **within 30 days of this order**.

**IT IS SO ORDERED.**

Dated:  December 14, 2018

Hon. Gonzalo P. Curiel
United States District Judge

18-cv-1221-GPC-JMA