1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN PORTER,<br><br>                                        Plaintiff,<br><br>v.<br><br>WILLIAM D. GORE, Sheriff of San Diego County, in his official capacity; and WARREN STANLEY, Commissioner of California Highway Patrol, in his official capacity,<br><br>                                        Defendants. | Case No.:  18-cv-1221-GPC-LL<br><br>**JUDGMENT AND ORDER:**<br><br>**1. DENYING PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' EXPERT OPINIONS;**<br><br>**2. GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; AND**<br><br>**3. DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 65–68]** |

California has regulated the use of automobile horns since 1913 and its restrictions have remained substantially unchanged since 1931.  The current version of the statute, California Vehicle Code Section 27001 ("Section 27001"), is nearly identical to the one

/ / /

1

that is part of the Uniform Vehicle Code.  (ECF No. 75-1 at 2.[1])  Plaintiff Susan Porter challenges Section 27001 as a law that violates her First Amendment rights by preventing or deterring her from using her horn to express her approval at a public demonstration. Based upon its review of the facts and application of the law, the Court concludes that Section 27001 passes intermediate scrutiny and is an appropriate regulation on the time, place, or manner of the protected speech and expression.

Before the Court are motions for summary judgment ("MSJs") filed by Defendant Warren Stanley, Plaintiff Susan Porter, and Defendant William D. Gore, and the corresponding response and reply briefs.  (ECF Nos. 66–68, 74–76, 80, 83, 84.)  Plaintiff also filed a Motion to Exclude Defendants' Expert Opinions.  (ECF No. 65.)  For the reasons detailed below, the Court **DENIES** Plaintiff's Motion to Exclude Defendants' Expert Opinions, **GRANTS** Defendants' Motions for Summary Judgment, (ECF Nos. 66, 68,) and **DENIES** Plaintiff's Motion for Summary Judgment, (ECF No. 67.)

I.    **BACKGROUND**

A.    **Factual Background**

1.    **California Vehicle Code Section 27001**

For purposes of this lawsuit, the relevant parts of the state's regulation on honking are found in California Vehicle Code Sections 27000 and 27001.

California Vehicle Code Section 27000 states, in part: "A motor vehicle . . . shall be equipped with a horn in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet, but no horn shall emit an unreasonably loud or harsh sound."  Cal. Veh. Code § 27000(a).

/ / /

---

[1] References to specific page numbers in a document filed in this case correspond to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

At issue here is California Vehicle Code Section 27001 which provides as follows: "(a) The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn.  (b) The horn shall not otherwise be used, except as a theft alarm system which operates as specified in Article 13 (commencing with Section 28085) of this chapter."  *Id.* § 27001.

Both the California Highway Patrol ("CHP") and the San Diego County Sheriff's Department have the authority to enforce Section 27001.  Whether to enforce a particular violation and what enforcement action to take is a matter within the officer's discretion. (ECF No. 67-18 at 5; ECF No. 75-1 at 9–10.)

## 2.    The Protest and Plaintiff's Citation

Following the November 2016 election through April 2018, weekly protests were held each Tuesday, starting at 9 or 10 a.m. and ending around 11 a.m., in front of then-Representative Darryl Issa's ("Representative Issa") district office at 1800 Thibodo Road, Vista, California.  (ECF No. 75-1 at 37.)  Initially, the San Diego County Sheriff's Department did not have a full-time presence at the protests but would respond to the area if called.  However, as the group of protestors began to increase in size and issues arose among the protestors, counter-protestors, and other people in the area, Lieutenant Michael Munsey ("Lieutenant Munsey") was assigned to be on site each week as the Department's liaison with the groups and to keep the peace.  (*Id.* at 38.)  There is no evidence that any CHP officer was present at any of the protests against Representative Issa.  (*Id.* at 6.)

A few weeks before the subject October 17, 2017 protest date, the Captain of the Vista Patrol Station (part of the San Diego County Sheriff's Department) attended a meeting of a homeowner's association held in a neighborhood close to Representative Issa's office.  (*Id.* at 38–39.)  At the meeting, the homeowners complained about parking, traffic issues, and noise arising from the protests.  (*Id.*)

3

1   Plaintiff, Ms. Susan Porter, had regularly participated in these weekly protests

2   since her retirement in July 2017.  (*Id.* at 38.)  Specifically, she attended the weekly

3   protest on October 17, 2017.  (*Id.* at 39.)

4   That day, Lieutenant Munsey corresponded with the San Diego County Sheriff's

5   Department regarding the size of the protest groups, various parking and traffic issues (in

6   which Lieutenant Munsey stated the traffic situation was "a bit more chaotic that day than

7   usual"), and whether the enforcement posture should remain the same.  (*Id.* at 40; ECF

8   No. 68-3 at 3.)  At some time in the morning of October 17, 2017, he radioed for the

9   traffic deputy on duty to come assist with enforcement of the traffic laws, and Deputy

10  Kyle Klein ("Deputy Klein") from the Vista Patrol Station responded and arrived in the

11  area.  (ECF No. 75-1 at 40.)  Deputy Klein was wearing his department-issued body-

12  worn camera while he was at the protest area.  (*Id.* at 41.)

13  Deputy Klein issued multiple citations that day for parking violations.  For

14  example, he issued a citation to the owner of a motorcycle parked across the street from

15  Representative Issa's office wearing a "Make America Great Again" ball cap and a shirt

16  bearing a patch reading "Trump Motorcycle Guy," and holding up a "Trump" sign.  (*Id.*

17  at 41, 43.)

18  At some point during the protest on October 17, 2017, Plaintiff decided to move

19  her vehicle to another parking area because she feared receiving a ticket for parking near

20  a fire hydrant.  As she was driving to another location and past the protesters, she honked

21  her horn 11–15 times in a row.  (*Id.* at 44.)  Deputy Klein's body-worn camera shows

22  Plaintiff honking her horn 14 times.  (*Id.* at 5.)  Afterwards, she was pulled over by

23  Deputy Klein.  (ECF No. 74-1 at 8.)  Deputy Klein explained that he pulled her over for

24  sounding her horn in violation of Section 27001.  (*Id.*; ECF No. 75-1 at 45.)  In response,

25  Plaintiff stated to Deputy Klein that "lots of people use their horns to support the

26  protestors."  (ECF No. 68-4 at 3–4.)

27

28

As Deputy Klein was writing the citation, Lieutenant Munsey approached and asked what the nature of the citation was.  When Lieutenant Munsey learned that it was for the unlawful use of the vehicle horn, Lieutenant Munsey stated: "Oh, illegally honking the horn?  If you want to, um, because everybody does it, if you feel like it and don't have any cites, warn them, if you don't write them, it's up to you.  Whatever you choose to do, it's your choice and I'll back your play."  (ECF No. 74-1 at 8–9; ECF No. 75-1 at 46.)  Deputy Klein issued the citation to Plaintiff.  (ECF No. 75-1 at 46.)

The issued citation listed a traffic court hearing date of December 12, 2017.  On that date, Plaintiff appeared in court to contest it, but the citation was dismissed by the court when Deputy Klein did not appear for the hearing.  (*Id.* at 48.)

### 3.      Follow-Up with the San Diego County Sheriff's Department

Plaintiff's counsel sent a letter, dated November 9, 2017, to the San Diego County District Attorney and the San Diego County Sheriff's Department.  (ECF No. 67-14.)  In the letter, Plaintiff's counsel stated that he is "seeking assurance that section 27001 will not be enforced against individuals engaging in protected speech," and "asking the Sheriff to refrain from enforcing section 27001 against protected speech or confirm if section 27001 will continue to be enforced as it was against Ms. Porter."  (*Id.* at 2, 4.)

Through counsel, the San Diego County Sheriff's Department sent a letter in response, dated November 29, 2017.  (ECF No. 67-15.)  The response letter stated that "Ms. Porter's citation was not issued as a content-based regulation of speech, but rather a straight forward violation of the Vehicle Code," and that "[w]hether or not [Plaintiff's] legal theory is valid or not is something that is best left for a court to decide."  (*Id.*)

### B.      Procedural History

### 1.      Complaint and Motion to Dismiss

On June 11, 2018, Plaintiff filed the Complaint, alleging in part a 42 U.S.C. § 1983 claim under the First Amendment against both Defendants.  (ECF No. 1.)  Plaintiff sued

18-cv-1221-GPC-LL

Defendant Warren Stanley in his official capacity as Commissioner of the California Highway Patrol ("Defendant CHP") and Defendant William D. Gore in his official capacity as Sheriff of San Diego County ("Defendant Sheriff Gore").[2]

The Complaint alleges that on its face or as applied, Section 27001 violates the First Amendment for several reasons. First, Section 27001 constitutes an overbroad restriction on the use of a vehicle horn for speech or expression. Second, Section 27001 constitutes a content-based restriction that is not narrowly tailored to a compelling government interest. And third, even if Section 27001 is considered content-neutral, it burdens substantially more speech or expression than necessary to protect legitimate government interests. Plaintiff seeks both declaratory and injunctive relief, requesting the Court to declare that the enforcement of Section 27001 "against protected expression" is unlawful and to enjoin both Defendants from enforcing the statute "against protected speech or expression." (*Id.* at 6–7.)

On August 13, 2018, Defendant CHP moved to dismiss the Complaint, which Defendant Sheriff Gore joined. (ECF Nos. 12, 13.) Plaintiff responded to the motion, and Defendant CHP replied. (ECF Nos. 17, 19.)

The Court ultimately denied Defendant CHP's Motion to Dismiss regarding Plaintiff's First Amendment claims. *Porter v. Gore*, 354 F. Supp. 3d 1162 (S.D. Cal. 2018) (ECF No. 26). The Court first held that, while honking can be expressive conduct, Section 27001 is a content-neutral regulation and the government may place reasonable time, place, and manner restrictions on the expression. However, Defendant CHP failed to meet the evidentiary and persuasive burden necessary to demonstrate that Section

---

[2] "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

18-cv-1221-GPC-LL

1    27001, as applied, was narrowly tailored to address the government's interests (of traffic

2    safety and noise reduction)—especially at the motion to dismiss stage of the lawsuit.

3    And because Plaintiff's First Amendment challenge to Section 27001 could proceed as-

4    applied, the Court did not address Plaintiff's facial challenge to Section 27001.

**2.    Sergeant William Beck as Defendants' Expert Witness**

6        To support their defense, Defendant CHP retained Sergeant William Beck

7    ("Sergeant Beck") as an expert witness.  (ECF No. 65-3.)  Sergeant Beck has submitted a

8    Declaration in support of Defendant CHP's Motion for Summary Judgment, (ECF No.

9    66-15,) and was deposed by Plaintiff on May 26, 2020, (ECF No. 66-6.)

10       On August 18, 2020, Plaintiff filed a Motion to Exclude Defendants' Expert

11   Opinions.  (ECF No. 65.)  Plaintiff's Motion argues that the opinions offered by Sergeant

12   Beck should be excluded pursuant to Federal Rule of Evidence 702 and *Daubert v.*

13   *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Defendant CHP responded to

14   the Motion, and Plaintiff replied.  (ECF Nos. 73, 82.)

**3.    Motions for Summary Judgment**

16       On August 18, 2020, Defendant CHP filed the first MSJ.  (ECF No. 66.)  The MSJ

17   argues that: (1) Plaintiff's as-applied First Amendment challenge is barred based on

18   ripeness and standing; (2) Plaintiff's as-applied challenge against CHP fails because there

19   is no evidence that CHP has done (or threatens to do) anything wrong; (3) Section 27001

20   is a reasonable time, place, and manner restriction; and (4) Section 27001 is not facially

21   overbroad.

22       Plaintiff also filed an MSJ.  (ECF No. 67.)  Plaintiff's MSJ contends that: (1)

23   Plaintiff has standing to challenge Section 27001 and the challenge is ripe; (2)  Plaintiff's

24   use of the vehicle horn constituted expressive conduct protected by the First Amendment;

25   (3) Section 27001 restricts expressive conduct in the traditional public forum of a public

26   street; (4) it is unconstitutional to enforce a categorical ban on expressive honking; and

7

1  (5) the Court may issue declaratory and injunctive relief against Defendants in their

2  official capacities.

3        Defendant Sheriff Gore joined Defendant CHP's MSJ.  (ECF No. 69.)  At the same

4  time, Defendant Sheriff Gore filed his own MSJ as well, to challenge Plaintiff's as-

5  applied challenge specific to him because: (1) Deputy Klein himself did not violate the

6  First Amendment when issuing a citation for Plaintiff; and (2) regardless of Deputy

7  Klein's action, his discretionary decision cannot be a basis for a municipality to be liable.

8  (ECF No. 68.)

9        Responses and Replies to each MSJs were filed.  (ECF Nos. 74–76, 80, 83, 84.)

10  Of note, Plaintiff filed one combined Response to Defendant CHP and Defendant Sheriff

11  Gore's MSJs.  (ECF No. 75.)

12  **II.   MOTION TO EXCLUDE DEFENDANTS' EXPERT**

13        **A.   Testimony by Sergeant Beck**

14        In his Declaration, Sergeant Beck states that he has been employed by the CHP for

15  24 years, been assigned to the CHP Academy training cadets for approximately four

16  years, and been assigned to the Academy Vehicle Code Unit and the Accident

17  Investigations Unit.  Sergeant Beck explains that CHP officers are charged with

18  enforcing the law, including the Vehicle Code, and commonly patrol the state highways

19  and respond to motor vehicle accidents and other situations that threaten public health or

20  safety.  (ECF No. 66-15 at ¶¶ 2–3.)

21        Sergeant Beck opined that, when a vehicle horn is used improperly, it can create a

22  dangerous situation by startling or distracting drivers and others.  (*Id.* at ¶ 5.)  In addition,

23  Sergeant Beck offered that a vehicle horn's usefulness as a warning device would be

24  diminished if law enforcement officers were unable to enforce Vehicle Code Section

25  27001.  (*Id.* at ¶ 6.)  Further, absent Section 27001, people would be free to, and could be

26  / / /

27

28

8

expected to, use the horn for purposes unrelated to traffic safety which would, in turn, diminish the usefulness of the vehicle horn for its intended purpose.  (*Id.*)

Sergeant Beck also formed the opinion that local noise ordinances are not adequate or practical substitutes for Section 27001 because there are 58 counties and hundreds of cities in California and CHP officers are not instructed on, or in the ordinary course provided with copies of, local noise ordinances—nor would it be practical to do so.  (*Id.* at ¶ 7.)  Moreover, since much of the CHP's enforcement activities take place on highways, it would not always be clear to a CHP officer which local jurisdiction's ordinances would apply to a specific enforcement action.  (*Id.*)  Under state law, all vehicles in California are required to have horns and it makes sense that their use should be subject to a single state-wide standard, not piecemeal local ordinances.  (*Id.*)

Sergeant Beck also opined that Penal Code Section 415(2), the disturbing the peace statute, was an inadequate substitute for Vehicle Code Section 27001 because Section 415(2) requires proof that the offender acted with malice and that a specific victim was disturbed by the noise.  (*Id.* at ¶ 8.)  Under this law, CHP would have to receive a complaint and then investigate rather than proceed based upon an officer's observations of the improper use of a horn in the course of his duties.  (*Id.*)

## B.  Applicable Law

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence 702 to ensure specialized and technical evidence is "not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing the "gatekeeping obligation" of the trial judge).  An expert witness may testify if: (1) the expert's specialized knowledge will help the trier of fact; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert reliably applied such principles and methods.

9

Fed. R. Evid. 702.  "It is the proponent of the expert who has the burden of proving admissibility." *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

It is generally stated that "[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

### C.    Analysis

Plaintiff challenges Defendant CHP's expert Sergeant Beck, on the basis that: (1) he is not qualified; (2) his testimony does not "help" the fact-finder; (3) his opinions are not based on "sufficient facts or data"; (4) his opinion is not the product of reliable principles or methods; and (5) he did not reliably apply the principles and methods to the facts of the case.  (ECF No. 65.)  Defendant CHP responds that Plaintiff's challenges, at most, go to the weight of the testimony, and are not objectionable under the law.  (ECF No. 73.)

Sergeant Beck meets the requirements of Federal Rule of Evidence 702 and is qualified.  Sergeant Beck's opinions are reliably founded upon his training and experience as a law enforcement officer who has conducted traffic accident investigations and has trained CHP officers.  His opinions are not mere "speculation."  "[T]here are many different kinds of experts, and many different kinds of expertise." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).  Where experts are retained to offer non-scientific testimony, the reliability inquiry will "depend[] heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)).  Sergeant Beck is qualified to

testify on Section 27001's implication on traffic safety and the law's utility for enforcement officers, given his extensive experience working for the CHP, responding to car accidents, and training CHP cadets.

Plaintiff questions whether Sergeant Beck's opinions "fit" the issues that are presented in the pending motions.  The Court finds that Sergeant Beck's opinions "fit" because they help the Court assess the relationship between Section 27001 and traffic safety, and gauge the availability of alternatives to Section 27001.  Specifically, his opinions present the practical realities of how the state may (or may not) achieve its goal of traffic safety without enforcing Section 27001.  Sergeant Beck's opinion assists the Court in addressing whether Plaintiff's requested "as-applied" remedy (of never enforcing Section 27001 against expressive honking) is workable.

The Court agrees with Plaintiff that experts cannot provide legal conclusions. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). However, Sergeant Beck's testimony is not a legal opinion.  Instead, his testimony concerns, in part, whether other laws can function as "practical substitutes."  (ECF No. 66-15 at 3.)  Discussing the practical realities of enforcing alternatives to Section 27001 is different from commenting on Section 27001's legality, or even the alternative provisions' legality.

Consequently, the Court **DENIES** Plaintiff's motion to exclude Sergeant Beck's opinions.  Ultimately, any limitations or deficiencies raised by Plaintiff go to the weight of the testimony rather than the admissibility of the opinions.[3]

/ / /

---

[3] Plaintiff's challenges to Sergeant Beck's testimony based on lack of foundation or authentication are similarly overruled.

18-cv-1221-GPC-LL

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material when it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See id.* at 322–23. Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading.  The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party."  *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).  In addition, cross-motions for summary judgment are decided independently.  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### IV.   DISCUSSION

#### A.   Article III Justiciability

Defendant CHP contends that Plaintiff has failed to demonstrate standing or ripeness to bring this lawsuit.  (ECF No. 66-1 at 14–15.)  As a threshold issue, the Court

/ / /

finds that Plaintiff retains standing and that her First Amendment challenges are ripe.[4] To demonstrate standing, a plaintiff must show: (1) an "'injury in fact,' which is an 'actual or imminent' invasion of a legally protected interest that is 'concrete and particularized'"; (2) causation, in that the injury must be "fairly traceable" to the challenged conduct; and (3) redressability, that plaintiff's injury is likely to be redressed by a favorable decision. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendant CHP argues that it had no role in issuing a citation or a warning for honking. (ECF No. 66-1 at 11.) CHP points to the lack of evidence that any CHP officer was present at any of the protests against Representative Issa, including at the time when Plaintiff received the citation. (*Id.*) Further, Plaintiff testified in deposition that she had no evidence of any CHP employee enforcing Section 27001 in retaliation of any person's participation in protest activities, in retaliation of any person's exercise of his/her First Amendment rights, or to silence any person's exercise of his/her First Amendment rights. (*Id.*) Nor does she have reason to believe so. (*Id.*) Finally, it is undisputed that CHP has no general policy to enforce the California Vehicle Code, let alone a policy directed to enforce Section 27001. (*Id.* at 12.)

Notwithstanding Defendant CHP's points, the Court finds that Plaintiff's claims meet the requirements for Article III justiciability.[5] In the context of a First Amendment

---

[4] The Court also notes that the standing and ripeness issues presented by the MSJs are limited to Plaintiff's claims directed against Defendant CHP. (ECF No. 66-1 at 14; ECF No. 83 at 7.) However, the Court's analysis in this section also applies to Defendant Sheriff Gore as to Article III justiciability to proceed with the lawsuit.

[5] Relatedly, the Court finds that it was appropriate for Plaintiff to name Defendant CHP as one of the Defendants in this lawsuit. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012).

challenge, the standing analysis is "unique" because of the "chilling effect" of restrictions on speech—therefore, plaintiffs may seek "preventative relief." *Id.* (citing *Ariz. Right to Life Political Action Comm.* ["*ARLPAC*"] *v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). As long as there is an intent to engage in the conduct at-issue and a credible threat of enforcement, Plaintiff satisfies standing; "an actual arrest, prosecution, or other enforcement action is not a prerequisite." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014).

In determining whether a credible threat of enforcement exists, courts have considered three factors: (1) "likelihood that the law will be enforced against the plaintiff"; (2) a "concrete detail" on whether plaintiff intends to violate the challenged law; and (3) whether the law applies to the plaintiff. *Italian Colors*, 878 F.3d at 1171–72 (citation omitted).

The Court concludes that Plaintiff's present case meets the three factors to establish a credible threat of enforcement. On the first factor, there is likelihood that the law will be enforced against Plaintiff since her October 17, 2017 citation "is good evidence that the threat of enforcement is not 'chimerical,'" *Susan B. Anthony List*, 573 U.S. at 164. While Defendant CHP asserts that it has never enforced Section 27001 against Plaintiff, it has nonetheless affirmed that the enforcement of Section 27001 at a political protest will "depend on the circumstances," and that CHP reserves the right to enforce Section 27001 against someone "who uses a vehicle horn other than when reasonably necessary to ensure safe operation or when the horn is used as a theft alarm system." (ECF No. 83-1 at 8.) Therefore, even without CHP enforcing Section 27001 against Plaintiff, it is reasonable that Plaintiff has self-censored and refrained from expressive honking to avoid a ticket given her past experience and CHP's reservation of its right to enforce the law. (*See* ECF No. 67-5 at 28–29.) Courts have understood such

/ / /

"self-censorship" as direct injury and as a "reasonable risk" of being subject to penalties under a statute. *ARLPAC v. Bayless*, 320 F.3d 1002, 1006–07 (9th Cir. 2003).

Plaintiff meets the second and third factors as well. Plaintiff has testified that she regularly drives her vehicle in areas where Defendants are responsible for traffic enforcement, and while doing so, observes protests in which she wishes to express her support by honking but has abstained for fear of a ticket. (ECF No. 83-1 at 9.) Further, Plaintiff testified: "if I was driving down the freeway and there was a banner that said 'Support Our Veterans,' I now would not honk my horn because the CHP could pull me over." (ECF No. 83-1 at 12.) *Cf. Italian Colors*, 878 F.3d at 1174 (finding a sufficient "concrete plan" when the declarations made clear that if it were legal to do so, plaintiffs would engage in the prohibited activity).[6] And as discussed above, to the extent that Section 27001 could be enforced against honking when it is not used to ensure safe operation or as a theft alarm, the provision could apply to Plaintiff's desired conduct.

Defendant CHP's Reply brief presents a similar, but slightly different standard which preserves the "concrete plan" factor but replaces the other two with "whether the prosecuting authorities have communicated a specific warning or threat" and "history of past prosecution or enforcement." *See Libertarian Party of Los Angeles Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (citation omitted). This standard is typically used to identify the credible threat of enforcement in general—including contexts outside of the First Amendment. In fact, *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129–30 (9th Cir. 1996), expressly flagged this distinction. The Court applies a more

---

[6] Defendant CHP's argument that Plaintiff's declaration is less specific and concrete in detail, (ECF No. 83 at 8,) is unpersuasive. If the operative concern is whether a plaintiff has identified the "when," "whom," "where," and "under what circumstances," *see Italian Colors*, 878 F.3d at 1174, Plaintiff's declaration clearly meets this concern (when driving down a freeway and if there is a banner that says "Support Our Veterans").

18-cv-1221-GPC-LL

"relaxed" inquiry in First Amendment cases,[7] because the alleged harm at issue is the "chilling effect" (in the form of self-censorship), "a harm that can be realized even without an actual prosecution." *Id.* (citations omitted).  Regardless, the two factors are effectively satisfied where: (1) Plaintiff received a citation for the conduct at issue; (2) CHP has reserved the right to enforce Section 27001; and (3) Plaintiff has self-censored herself after the citation.  "[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *ARLPAC v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003).  Accordingly, Plaintiff has established standing under either standard.

Plaintiff's actions are ripe as well.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 n.5 (2014) (discussing how in pre-enforcement challenges, standing and ripeness "boil down to the same question"); *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) ("Constitutional ripeness is often treated under the rubric of standing because 'ripeness coincides squarely with standing's injury in fact prong.'").  As previously discussed, Plaintiff has suffered the constitutional injury of self-censorship.  This makes Plaintiff's claims "necessarily ripe for review." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003).  "In the context of First Amendment speech, a threat of enforcement may be inherent in the challenged statute, sufficient to meet the constitutional component of the ripeness inquiry." *Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010).  Therefore, contrary to Defendant CHP's arguments, (ECF No. 66-1 at 16–18,) Plaintiff's claims are ripe for review.

/ / /

---

[7] *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000), concerned the First Amendment as well, but the alleged harm was not self-censorship.  Instead, the dispute was over laws that prohibit discrimination in rental housing based on marital status. *Id.* at 1139.

18-cv-1221-GPC-LL

**B.    Nature and Scope of the First Amendment Challenge**

"The First Amendment applies to state laws and regulations through the Due Process Clause of the Fourteenth Amendment." *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1053 (9th Cir. 2000).  "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp. Inc.*, 529 U.S. 803, 816 (2000).  Two types of First Amendment challenges may be brought against a law: facial, and as-applied.  *Hawkins v. City & Cnty. of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999).

A facial challenge must show either that "'no set of circumstances exists under which [the challenged law] would be valid,' or that it lacks any 'plainly legitimate sweep.'"  *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1314–15 (9th Cir. 2015) (alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). In contrast, if plaintiffs' challenge is "as applied," then they must show only that the statute unconstitutionally regulates plaintiffs' own speech.  *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1174–75 (9th Cir. 2018); *see also N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010) ("[An] 'as-applied' challenge to a law acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitutional as applied to [particular parties].").

However, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *see John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (noting as to the parties' disagreement regarding whether the claim at issue "is properly viewed as a facial or as-applied challenge," that "[t]he label is not what

matters").  *See generally* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321 (2000) ("There is no single distinctive category of facial, as opposed to as-applied, litigation.  All challenges to statutes arise when a litigant claims that a statute cannot be enforced against her.").

The Complaint challenges Section 27001 both on its face and as applied.  (ECF No. 1 at 7.)  However, Plaintiff's MSJ only presents arguments and case law to support an "as applied" challenge.  (ECF No. 67 at 15.)  Meanwhile, Plaintiff's Response to Defendant CHP's MSJ states that Plaintiff "respectfully preserves her position that Section 27001 is unconstitutional on its face as a content based or overbroad prohibition on speech or expressive conduct."  (ECF No. 75 at 55.)  Given that Plaintiff has not supported a facial challenge in her MSJ, the Court will limit its analysis to an as-applied challenge.  Accordingly, the Court will address whether the restriction of the protected activity was "unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others."  *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 856 (9th Cir. 2004) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)).

### 1.     Expressive Activity in a Public Forum

Before Defendants are required to defend Section 27001, Plaintiff must demonstrate that the law abridges "speech," as it is understood in First Amendment jurisprudence.  *See* U.S. Const. amend. I (prohibiting laws "abridging the freedom of *speech*" (emphasis added)).  Here, Plaintiff submits that a "honk" is protected "speech" as expressive conduct.  For a conduct to be expressive, it requires "(1) 'an intent to convey a particularized message' and (2) a 'great' 'likelihood . . . that the message would be understood by those who viewed it.'"  *Edge v. City of Everett*, 929 F.3d 657, 668 (9th Cir. 2019) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)), *cert. denied sub nom. Edge v. City of Everett, Washington*, 140 S. Ct. 1297 (2020).  Plaintiff does not need to

show that others understood the message—only that there is "great likelihood." *Id.* at 668–69.

Plaintiff has produced sufficient evidence to support the position that her honking was expressive conduct. Plaintiff testified that she honked with the intent "to signify support of the protest," and that the honking was met with protesters cheering. (ECF No. 67-5 at 6, 26.) Plaintiff informed Deputy Klein that she was honking for the protestors as well. (ECF No. 67-7 at 48.) Deputy Klein also heard other people honking at the protest, and when Lieutenant Munsey said "everybody does it," Deputy Klein understood Lieutenant Munsey's statement to mean "that all the protestors have been honking their horn or people in support of or whatever." (ECF No. 67-7 at 32, 46.) Without any contravening affirmative evidence presented by Defendant CHP, the Court concludes that Plaintiff's honking intended to convey a particular message which had a great likelihood to be understood by the audience. *Cf. Mitchell v. Maryland Motor Veh. Admin.*, 450 Md. 282, 309 (2016) (describing the dialogue between a vanity plate and a responsive honk from a passing motorist as protected under the First Amendment), *as corrected on reconsideration* (2016).

The Court also finds that the expressive conduct occurred in a traditional public forum. It is undisputed that when Plaintiff was cited for honking in violation of Section 27001, she was driving on a public street. Plaintiff also testified of her desire to express support for protests by honking when she regularly drives by the public street where Defendants are responsible for traffic enforcement. (ECF No. 67-2 at 2; ECF No. 67-5 at 28–29.) Public streets are "the archetype of a traditional public forum." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (quoting *Snyder v. Phelps*, 562 U.S. 443, 456 (2011)).

/ / /

18-cv-1221-GPC-LL

### 2.   Content-Neutral Restriction

"The government's right to limit expressive activity in a public forum 'is 'sharply' circumscribed.'"  *S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136 (9th Cir. 1983) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)), *as amended by* 160 F.3d 541 (9th Cir. 1998).  The applicable standard of review depends on whether the restriction is content-based or content-neutral.

The Court concludes that Section 27001 is content-neutral.  (ECF No. 26).  The "principal inquiry is 'whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'"  *Colacurcio v. City of Kent*, 163 F.3d 545, 551 (9th Cir. 1998) (citation omitted).  If the regulation's aim is to control "secondary effects resulting from the protected expression, rather than at inhibiting the protected expression itself," content neutrality is met.  *Id*. (citation omitted).  As other courts have discussed, which this Court finds persuasive:

> The ordinance does not attempt to regulate the "content" of horn-honking. Rather, it prohibits all horn-honking, except in cases of imminent danger, regardless of the user's intended meaning. . . . [T]he law neither discriminates among messages nor limits the expression of any particular message.  It is based on the manner of expression, not on its content.

*Weil v. McClough*, 618 F. Supp. 1294, 1296 (S.D.N.Y. 1985); *accord Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294, 1313 (D.N.M. 2016).

Because Section 27001 does not discriminate based on the "content" of honking, and because Section 27001 regulates the secondary effects of the expression with no reference to the content, Section 27001 is content-neutral and triggers an intermediate scrutiny standard of review.  *See Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *United States v. O'Brien*, 391 U.S. 367 (1968).

Under *O'Brien*, a content-neutral regulation will be sustained if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to

the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377.  To meet this standard, a regulation need not be the least speech-restrictive means of advancing the government interests.  *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994).  "Rather, the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'"  *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).  Narrow tailoring in this context requires that the means chosen does not "burden substantially more speech than is necessary to further the government's legitimate interests."  *Id.*

Under the intermediate scrutiny standard:

> the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (quoting *Ward*, 491 U.S. at 791); *see also Berger v. City of Seattle*, 569 F.3d 1029, 1059 (9th Cir. 2009) (discussing the analysis as "an intermediate level of scrutiny").

## C.    Analysis Under the Intermediate Scrutiny Standard

### 1.    Significant Government Interest

Defendant CHP has identified two significant government interests advanced by Section 27001: (1) traffic safety, and (2) reducing noise pollution.  (ECF No. 66-1 at 21–22).  These interests have long been recognized as significant and Plaintiff agrees, at least

/ / /

21

18-cv-1221-GPC-LL

in the abstract,[8] (ECF No. 67 at 20,) and the Court does too.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989) (discussing how the government has "substantial interest in protecting its citizens from unwelcome noise," and how it may regulate "even such traditional public forums as city streets and parks from excessive noise"); *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 823 (9th Cir. 2013) ("Promoting traffic safety is undeniably a substantial government interest."); *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998) (reiterating that the "oft-invoked and well-worn [state] interests of . . . promoting traffic and pedestrian safety" are substantial); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002) ("There is no doubt the City has a legitimate interest in protecting its citizens and ensuring that its streets and side-walks are safe for everyone.  Its interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety." (citation omitted)); *Kuba v. 1-A Agr. Ass'n*, 387 F.3d at 858 (discussing how interests in pedestrian and traffic safety, as well as in preventing traffic congestion, are significant).

The Court finds that Section 27001 advances a significant interest.  However, merely invoking interests in regulating traffic is insufficient by itself.  *Weinberg*, 310 F.3d at 1038.  The government must also show that the proposed communicative activity endangers those interests.  *Id.* at 1039.

/ / /

---

[8] Plaintiff argues that when the government articulates a significant government interest, it must also prove that the communicative activity also endangers those interests.  (ECF No. 67 at 20; ECF No. 75 at 30.)  While this is a valid concern, it is better addressed in the subsequent "narrow tailoring" aspect of the discussion, *infra* Section IV.C.2.  That is because the intermediate scrutiny analysis requires the challenged law to be "narrowly tailored to serve a significant government interest."  *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816–17 (2000).

18-cv-1221-GPC-LL

1

2.     **Narrow Tailoring**

2      The burden is on the Defendants to prove that Section 27001 is narrowly tailored.

3  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948

4  (9th Cir. 2011).  To meet this requirement, the contested law "need not be the least

5  restrictive or least intrusive means of doing so."  *Ward v. Rock Against Racism*, 491 U.S.

6  781, 798–99 (1989).  Rather, there are two primary considerations: (1) whether the

7  significant government interest would be achieved less effectively without the regulation;

8  and (2) whether the regulation burdens substantially more speech than necessary.  *See id.*

9      As a starting point, Defendants must show that Plaintiff's honking endangered

10  traffic safety and produced noise pollution.  The critical question in analyzing the second

11  prong is what form of proof is required to satisfy Defendants' burden.  Defendant CHP

12  argues that, at this stage of the lawsuit, it has produced "undisputed evidence" based on

13  scientific articles, reports, legislative records, and expert testimony that Section 27001 is

14  narrowly tailored.  (ECF No. 66-1 at 22.)  While Defendant CHP has offered numerous

15  scientific articles and reports, the articles constitute inadmissible hearsay and cannot be

16  considered in deciding the pending motions.

17      Plaintiff argues that "Defendants have produced nothing but anecdotal

18  speculation."  (ECF No. 67 at 21.)  The primary thrust of Plaintiff's arguments is that

19  Defendants must provide evidence on the harms of *expressive honking specifically*.  (*See,*

20  *e.g.*, ECF No. 67 at 21–22; ECF No. 75 at 30–32; ECF No. 80 at 15–17.)  Plaintiff goes

21  to great lengths to identify the dearth of admissible evidence regarding the legislative

22  history for Section 27001 or studies gauging the impact of horn-honking.[9]  While

23  ————————————

24

25  [9] The Court is aware that both parties submitted reams of evidentiary objections.  To the

26  extent that the objected-to evidence is admissible and relied on, the Court overrules the
objections.  To the extent that the objected-to evidence is not referenced in this Order, the

27  Court overrules the objections as moot.

28                                                                              18-cv-1221-GPC-LL

Defendants have offered little in the way of scientific studies that is not hearsay, the Court finds that history, consensus, common sense, and the declaration of Sergeant Beck supports the Defendants' proffered justification.

In *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001), the Supreme Court examined how a party may establish the relationship between the harm that underlies the state's interest in regulating commercial speech and the means identified by the state to advance that interest.  "This burden is not satisfied by mere speculation or conjecture." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).  At the same time,

> we do not read our case law to require that empirical data come to us accompanied by a surfeit of background information. . . . [W]e have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even, in a case applying strict scrutiny, to justify restrictions based solely on history, consensus, and "simple common sense."

*Florida Bar v. Went For It, Inc*., 515 U.S. 618, 628 (1995) (citations omitted); *cf. Cuviello v. City of Vallejo*, 944 F.3d 816, 828 (9th Cir. 2019) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52 (1986)) (discussing how the First Amendment does not require a government, before enacting a law, to conduct new studies or produce evidence independent of that already generated); *Phillips v. Borough of Keyport*, 107 F.3d 164, 178 (3d Cir. 1997) (discussing how insistence on the creation of a legislative record to defend against challenge of legislation is an unwarranted intrusion into the internal affairs of the legislative branch of governments).

The Court concludes that Defendant CHP produced sufficient evidence on how (1) accomplishing traffic safety and reducing noise pollution would be less effective without Section 27001; and (2) Section 27001 does not burden more speech than necessary.

/ / /

24

18-cv-1221-GPC-LL

### a.    Less Effective Absent the Regulation

Without Section 27001, traffic safety and reducing noise pollution would be less effective.  In addition, common sense informs us why there is a consensus and need for restrictions on horn use.  Sections 27000 and 27001 were designed to further traffic safety by designating horns as warning devices.  Being audible at a distance of 200 feet, the honk of a horn commands the attention of motorists and pedestrians in a substantially wide area.  Commanding attention of those in listening distance necessarily forces the listener to focus on the source of the honk and attempt to determine the purpose of the honk.  A distraction created by the honk reduces a motorist's ability to drive defensively which increases the likelihood of an accident.  Therefore, Section 27001 improves traffic safety by confining the use of a horn to safety and theft-control purposes.

Further, the substance of Section 27001 has been in place in one form or another since 1913 and is not a recent solution to a local problem.  It is an analogue of the recommended law in the Uniform Vehicle Code and has been followed by a number of states throughout the nation.[10]  It is nearly universally accepted as a means to reduce the incidence of vehicular accidents.

Plaintiff argues that a horn may be used at varying frequency and volume and that Defendants have presented no evidence to suggest that mere expressive use of a horn necessarily threatens traffic safety regardless of frequency, volume, or context.  (ECF No. 67 at 22.)  While there is no specific evidence relating to the level of decibels that Plaintiff's horn produced, it is reasonable to assume that her car horn complied with Section 27000, was thus audible at a distance of 200 feet, and was therefore capable of drawing the attention of all of the motorists and pedestrians within the range of the honk.

---

[10] *See, e.g.*, Ark. Code Ann. § 27-37-202(a)(2); Del. Code Ann. tit. 21, § 4306(b); N.Y. Veh. & Traf. Law § 375.1.(a); Tex. Transp. Code Ann. § 547.501(c).

With respect to frequency, the record discloses that Plaintiff honked her horn 14 times which would have constituted an extended and continuing distraction.  Finally, with respect to context, the fact that the honk is delivered as expressive conduct does not reduce the distraction or the risk of causing an accident.

In addition, when used for purposes other than a warning or warding off would-be car thieves, common sense shows that the unauthorized use of a horn creates noise levels that contribute to noise pollution.  Therefore, Section 27001 would at least directly contribute to reducing environmental noise pollution by mitigating one of the sources of road traffic noise.  These are not hypothetical problems as Plaintiff wishes to portray.  The homeowner's association expressed frustration about the noise arising from the protests to the San Diego County Sheriff's Department's representative.  (*See* ECF No. 75-1 at 38–39.)

Defendant CHP has well-explained that there are no obvious alternatives to Section 27001 in meeting the government's objectives.  The Court is especially concerned as to how Plaintiff's requested remedy of "not enforcing Section 27001 against expressive honking" would work in practice.  The Court understands that an injunction does not need to be laser-focused in terms of its specificity.  However, it still must be "reasonably understandable."  *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 685 (9th Cir. 1988).  And the breadth of First Amendment case law reveals that, in practice, it will be extremely difficult, if not impossible, to apply Section 27001 in a workable manner when a honk must be assessed in context in order to be elevated as a protected expression.  *Edge v. City of Everett*, 929 F.3d 657, 668–69 (9th Cir. 2019), *cert. denied sub nom. Edge v. City of Everett, Washington*, 140 S. Ct. 1297 (2020) (context is everything when deciding whether others will likely understand an intended message conveyed through expressive conduct).

/ / /

The Court is also persuaded that alternative provisions to Section 27001 do not adequately address traffic safety and noise control.  Plaintiff first makes a blanket assertion that "local noise ordinances" solve the problem.  (ECF No. 67 at 26; ECF No. 75 at 53; ECF No. 80 at 21–22.)  There is no discussion on what these noise ordinances look like, or how these ordinances will survive a different wave of constitutional challenges when someone will inevitably proclaim that he or she was making excessive noises for expressive purposes.  *Cf. Cuviello v. City of Vallejo*, 944 F.3d 816, 830 (9th Cir. 2019) (finding an ordinance constitutionally problematic because it "requires a permit for *any* use of a sound-amplifying device at *any* volume by *any* person at any location—without any specifications or limitations that may tailor the permit requirement to situations involving the most serious risk to public peace or traffic safety" (emphases in original)).  Sergeant Beck's testimony is instructive on this issue.  There are 58 counties and hundreds of cities in California, and in highways it would be much less clear which local ordinance would apply.  (ECF No. 66-15 at 3.)  If choice-of-law issues haunt litigants and courts all the time, it is easy to imagine what logistical nightmare that reliance on a patchwork of ordinances would bring, with its countless variations and permutations.  This goes beyond "administrative convenience," "ignorance," or excuse from "lack of resources," as Plaintiff characterizes CHP's response.  (ECF No. 80 at 21.)

The Penal Code is not an adequate alternative either.  As Sergeant Beck testified, enforcing and prosecuting California Penal Code Section 415(2) presents its own challenges.  To establish liability under Section 415(2), there must be an identifiable victim, and the mens rea of both malice and willfulness.  (ECF No. 66-15 at 3.)  Such elements make prosecution more difficult than ones under Section 27001 due to: (1) the fleeting nature of noise, (2) cars being mobile, and (3) the general fact that many times frivolous honking is not motivated by "malice."  (ECF No. 74 at 27.)  More importantly, the additional evidentiary burden would likely result in under-prosecution of horn-

18-cv-1221-GPC-LL

honking and reduce the level of protection to the public that is provided by Section 27001.

Plaintiff argues that establishing such elements are not difficult obstacles. For example, Plaintiff states that the identifiable victim can be the officers themselves. (ECF No. 80 at 20.) In addition, because "malice" only means "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act," it is apparently much easier to establish than what Defendant CHP argues. (*Id.*) But ultimately, Section 415(2) would, by virtue of the additional liability elements, decrease the safety benefits produced by Section 27001 by making a prosecution under Section 415(2) more difficult. As such, honking prosecutions will fall if Section 415(2) is the only available enforcement mechanism. *Cf. McCullen v. Coakley*, 573 U.S. 464, 495 (2014) (discussing that to satisfy the First Amendment, the less burdensome alternatives would need to fail to achieve the government's interests, not simply that the government's chosen route is easier). This proves that Section 415(2) is not as effective in accomplishing the goals of traffic safety and noise control as Section 27001 does.

### b.    Does Not Burden More Speech Than Necessary

Second, Defendant CHP adequately proved that Section 27001 does not burden more speech than necessary. The noise from the vehicle horn is not a byproduct of the prohibited activity. Instead, the noise "is created by the medium itself." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984). The fact that there is no obvious way to substitute the enforcement of Section 27001 also demonstrates Section 27001's appropriate scope of not burdening more speech than what is needed.

Plaintiff relies on *Cuviello v. City of Vallejo*, 944 F.3d 816, 830 (9th Cir. 2019) to argue that Section 27001 covers more speech than necessary to achieve its ends. (ECF No. 75 at 39; ECF No. 80 at 19–20.) However, *Cuviello* is easily distinguishable from

28

18-cv-1221-GPC-LL

the current facts.  *Cuviello* concerned a regulation that required a permit to use a sound amplifying device in the city.  Such "prior restraint" on speech is treated as inherently suspect under First Amendment jurisprudence.  944 F.3d at 831–32.  Further, Plaintiff's attempt to characterize Section 27001 as a "blanket ban" on expressive honking, (ECF No. 75 at 39,) begs the question of what qualifies as expressive honking.  Contrary to *Cuviello*'s recognition that sound-amplifying devices are "'indispensable instruments' of public speech," 944 F.3d at 825, honking does not necessarily rise to that level and inherently depends on the context.

The fact that at least two sister court cases agree that honking ordinances survive First Amendment challenges reassures the Court's conclusion.  First, *Weil v. McClough*, 618 F. Supp. 1294, 1295 (S.D.N.Y. 1985) upheld the constitutionality of a honking ordinance that provided: "No person shall operate or use or cause to be operated or used any claxon installed on a motor vehicle, except as a sound signal of imminent danger." The language appears quite similar to that of Section 27001, which also prohibits honking other than when for a warning or a theft alarm.  In fact, *Weil* illustrates how little the court needed for the government to justify the honking ordinance's legitimacy, because the ills of honking were self-evident.  *Id.* at 1296 ("In this Court's view, any effort to dim the seemingly unending crescendo of honking horns on New York's city streets is to be commended.").

Second, *Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294, 1299 (D.N.M. 2016) upheld the constitutionality of an ordinance that prohibited the use of vehicle horn or lights in a manner that would "distract other motorists" or "disturb the peace." Plaintiff attempts to use this law to argue that a more targeted regulation exists.  (ECF No. 67 at 26.)  This does not move the Court for two reasons.  One, intermediate scrutiny does not require the least restrictive means to address a problem, so the fact that a law narrower in scope exists is irrelevant.  *See Ward v. Rock Against Racism*, 491 U.S. 781,

798–99 (1989).  Two, if the Court applies the arguments that Plaintiff has been making throughout her briefs, this ordinance fails Plaintiff's test as well.  The *Martinez* ordinance would still be unconstitutional because in theory someone could honk in a manner that would disturb the peace but also for expressive purposes.

One other honking case deserves the Court's attention.  *Goedert v. City of Ferndale*, 596 F. Supp. 2d 1027 (E.D. Mich. 2008) was also a case that implicated honking, but one where the court found the ordinance unconstitutional.  However, the facts are distinguishable in two ways.  First, *Goedert* primarily concerned an ordinance that prohibited *signs* asking motorists to honk their horns for a protest.  The court found the regulation on signs to be content discriminatory because "[s]igns with the word 'honk' contained in it are treated differently than other signs."  *Id.* at 1033.  Second, *Goedert* took issue with the selective enforcement of the statute.  *Id.* at 1035 ("The City of Ferndale selectively enforces the application of the 'Honk Statute.'  Ferndale permits non-traffic related expressive horn-honking throughout the year for several events [such as celebratory honking after sporting events or weddings].").  The dispute in front of this Court is not a selective enforcement issue.

### 3.   Ample Alternative Channels of Communication

Finally, it is apparent that Section 27001 leaves ample alternative channels of communication.  *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1201–02 (9th Cir. 2016) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.").  Like *Lone Star*, where the appellants were "free to disseminate their messages through myriad other channels," *id.* at 1202, Plaintiff was able to participate in the protests in many other ways.

Plaintiff is correct that "an alternative is not ample if the speaker is not permitted to reach the intended audience."  *Berger v. City of Seattle*, 569 F.3d 1029, 1049 (9th Cir.

2009); *see also United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 969 (9th Cir. 2008), *as corrected* (Oct. 28, 2008).  But such is not the case here. Plaintiff attended the weekly protests against Representative Issa multiple times, and the only time she ever honked at the protest was on the day of October 17, 2017.  (ECF No. 75-1 at 4–5.)  This demonstrates that she expressed herself and reached the audience in ways other than honking.  Just because the enforcement of Section 27001 that day restricted Plaintiff's preferred method of communication in the one instance is not a reason to invalidate Section 27001 on First Amendment grounds.  *Cf. G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1074–75 (9th Cir. 2006) (upholding a law that banned the "entire medium" of pole signs because "other non-sign-based forms of communication" were available).

*    *    *

The Court concludes that Section 27001 is constitutional as applied to Plaintiff's expressive conduct.  The law passes intermediate scrutiny and therefore is an appropriate regulation on the time, place, or manner of the protected speech and expression.  Section 27001 is narrowly tailored to serve a significant government interest, namely traffic safety and noise pollution.  The Court finds that the alternative ways of regulating honking would be less effective than what is provided in Section 27001.  Finally, Section 27001 leaves open ample alternative channels for communication, given Plaintiff's other actions attending the protests without honking.[11]

/ / /

---

[11] Having established that Section 27001 is constitutional as applied to Plaintiff's set of facts, it is unnecessary to address whether Defendant Sheriff Gore is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

18-cv-1221-GPC-LL

1 | **V.   CONCLUSION**

2      For the reasons discussed above, this Court **GRANTS** Defendants Warren Stanley

3 and William D. Gore's Motions for Summary Judgment, (ECF Nos. 66, 68,) and

4 **DENIES** Plaintiff Susan Porter's Motion to Exclude Defendants' Expert Opinions and

5 Motion for Summary Judgment, (ECF Nos. 65, 67.)  As none of Plaintiff's claims against

6 Defendants survive summary judgment, the Clerk of Court is **DIRECTED** to close the

7 case.

8      **IT IS SO ORDERED.**

9

10 Dated:  February 5, 2021

11                                             Hon. Gonzalo P. Curiel

12                                             United States District Judge

18-cv-1221-GPC-LL